EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                Plaintiff,

and

DEREK DAVIS, ASHLEY BANKS,
MALEAH CALDWELL, JONATHAN
DANIELS, QUINTIN DANIELS, FIONA
DAWSON, MONICA EDWARDS,
RACHEL FLEMMING, WILLIE LEE
FREDERICK, MARY JO FULLER,
DERRICK GREEN, KIRA HUNTLEY,
TEKOY HUTTO, STEPHANIE JACKSON,
DANNY KING, NAKIA McCRAY,
CHARLES MOORE, DOMARNIQUE
MOORE, JAMAR MOORE, MARCUS
MOORE, JOSEPH PHILLIPS, TOMIKA
ROBERTS, KASHONDA WALKER,
DANA SPRADLEY, ASHLEY TAYLOR,
ANDREA WARE,

                Plaintiff-Intervenors,

vs.

JEROD BAKER and RODNEY BAKER,
jointly d/b/a "J & R BAKER FARMS" and
"J&R BAKER FARMS, LLC"; and
J & R BAKER FARMS PARTNERSHIP,

                Defendants.

Civil Action No. 7:11-cv-136-HL

## COMPLAINT IN INTERVENTION

## PRELIMINARY STATEMENT

1.        Plaintiff-Intervenors are residents of South Georgia who worked for Defendants' farm operations in and around Colquitt County, Georgia in 2010, 2011, 2012, or 2013.

2.        Plaintiff-Intervenors join the Equal Employment Opportunity Commission ("EEOC") in asserting claims under Title VII of the Civil Rights Act of 1964, alleging that Defendants intentionally engaged in a pattern or practice of discrimination against its African-American workers of American nationality ("black American workers"). Defendants, who were legally bound to hire Plaintiff-Intervenors as a pre-requisite to Defendants' participation in the H-2A guestworker program, routinely segregated their foreign and domestic workforces, subjecting the domestic workers to a series of discriminatory practices. Defendants systematically deprived Plaintiff-Intervenors of employment opportunities by offering them fewer hours of work, intentionally frustrating their production in the field, and imposing upon them terms and conditions which were neither disclosed to domestic workers nor applied to foreign workers. During each of the four years for which Plaintiff-Intervenors bring claims, Defendants fired nearly all of their domestic workers, including Plaintiff-Intervenors, while retaining their foreign workforce.

3.        Plaintiff-Intervenors Ashley Banks, Jonathan Daniels, Quintin Daniels, Derek Davis, Monica Edwards, Willie Lee Frederick, Derrick Green, Kira Huntley, Tekoy Hutto, Nakia McCray, Charles Moore, Domarnique Moore, Jamar Moore, Joseph Phillips, Tomika Roberts and Ashley Taylor also assert claims under 42 U.S.C. § 1981 to correct Defendants' discrimination in contract.

4.        Plaintiff-Intervenors Ashley Banks, Jonathan Daniels, Quintin Daniels, Monica Edwards, Willie Lee Frederick, Derrick Green, Kira Huntley, Tekoy Hutto, Nakia McCray, Charles Moore, Domarnique Moore, Jamar Moore, Joseph Phillips, Tomika Roberts, and Ashley Taylor also assert claims under the federal Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), alleging that Defendants made false or misleading statements to these Plaintiff-Intervenors, breached the terms of their working arrangements with these Plaintiff-Intervenors, and failed to pay wages owed when due to some of these Plaintiff-Intervenors.

## JURISDICTION AND VENUE

5.        This Court has jurisdiction of this action pursuant to:

    a.   28 U.S.C. § 1331 (Federal Question);

    b.   28 U.S.C. § 1343 (Civil Rights); and

    c.   29 U.S.C. § 1854 (AWPA).

6.        Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4, because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside there.

## I.        ADMINISTRATIVE PROCEEDINGS

7.        Within one hundred and eighty (180) days of the discriminatory action taken against them by Defendants, Plaintiff-Intervenors Ashley Banks, Maleah Caldwell, Jonathan Daniels, Fiona Dawson, Monica Edwards, Rachel Flemming, Mary Jo Fuller, Derrick Green, Kira Huntley, Tekoy Hutto, Stephanie Jackson, Danny King, Domarnique Moore, Jamar Moore,

Marcus Moore, Tomika Roberts, Kashonda Walker, Dana Spradley and Andrea Ware filed charges of discrimination with the EEOC.

8.     For 2012, Plaintiff-Intervenors Quintin Daniels, Derek Davis, Willie Lee Frederick and Ashley Taylor assert claims based on the timely filing of a charge alleging class-wide discrimination with the EEOC by Plaintiff-Intervenor Domarnique Moore.

9.     For 2013, Plaintiff-Intervenors Jonathan Daniels, Charles Moore, Nakia McCray and Joseph Phillips assert claims based on the timely filing of a charge alleging class-wide discrimination with the EEOC by Plaintiff-Intervenor Monica Edwards.

10.     The EEOC issued a letter of determination finding cause for Plaintiff-Intervenors' discrimination allegations on August 15, 2013.

11.     The EEOC attempted conciliation with the Defendants, and it was unsuccessful.

## II.     PARTIES

12.     Plaintiff EEOC is the federal agency charged with the administration, interpretation, and enforcement of Title VII of the Civil Rights Act of 1964.

13.      Plaintiff-Intervenors Maleah Caldwell, Jonathan Daniels, Fiona Dawson, Rachel Flemming, Mary Jo Fuller, Danny King, Marcus Moore, Kashonda Walker (maiden name Sinclair), Dana Spradley and Andrea Ware were employed by Defendants in 2010.

14.     Plaintiff-Intervenor Stephanie Jackson was employed by Defendants in 2011.

15.     Plaintiff-Intervenors Ashley Banks, Quintin Daniels, Derek Davis, Willie Lee Frederick, Derrick Green, Kira Huntley, Tekoy Hutto, Domarnique Moore, Jamar Moore and Ashley Taylor were employed by Defendants in 2012.

16.     Plaintiff-Intervenors Jonathan Daniels, Monica Edwards, Nakia McCray, Charles Moore, Joseph Phillips and Tomika Roberts were employed by Defendants in 2013.

17.     Plaintiff-Intervenors are all African-American ("black") and of United States national origin ("American").

18.     At all times relevant to this action, Plaintiff-Intervenors were United States workers as defined by 20 C.F.R. § 655.103(b) (H-2A Regulations).

19.     Defendants Jerod Baker and Rodney Baker are day-to-day managers with operational control over the agricultural operations doing business as "J & R Baker Farms" and/or "J&R Baker Farms, LLC."

20.     Though Defendants Jerod Baker and Rodney Baker have done business as "J&R Baker Farms, LLC" since at least Fall 2010, no limited liability corporation of that name existed until one was registered with the Georgia Secretary of State in February 2014.

21.     At all times relevant to this action, Defendants Jerod Baker and Rodney Baker had the power to hire and fire Plaintiff-Intervenors and had control over their conditions of employment, as indicated by their actions in directing termination of some of the Plaintiff-Intervenors.

22.     The "Employer's Certification" sections of all of the job orders used to recruit Plaintiff-Intervenors were signed by Jerod Baker.

23.     Upon information and belief, Defendant J&R Baker Farms Partnership is a general partnership with its principal place of business located at 561 Roundtree Bridge Road, Norman Park, Georgia 31771.

24.     Defendants Jerod Baker and Rodney Baker are general partners in Defendant J&R Baker Farms Partnership.

25.     Under Georgia law, Defendants Jerod Baker and Rodney Baker are agents of Defendant J&R Baker Farm Partnership and held actual authority to bind J&R Baker Farms Partnership with regard to all actions and omissions alleged in this Complaint. O.C.G.A. § 14-8-9.

26.     To the extent that Defendants Jerod Baker and Rodney Baker took actions related to the allegations in this Complaint, those actions were taken for the purpose of carrying on the business of J&R Baker Farms Partnership in the usual way.

27.     At all times relevant to this action, Jerod Baker, Rodney Baker, and J&R Baker Farms Partnership ("Defendants") were engaged in the planting, harvesting, packing, and production of produce in and around Colquitt County, Georgia, for sale in interstate commerce.

28.     At all times relevant to this action, Defendants were engaged in an industry affecting interstate commerce and employed fifteen (15) or more employees for each working day in each of twenty of more calendar weeks in 2010, 2011, 2012, and 2013.

29.     Defendants constituted an integrated enterprise under Title VII as they have common management in the individual Bakers, common ownership in the individual Bakers, centralized control and operations so interrelated that they are indistinguishable.

30.     For the reasons described in Paragraphs 19 through 29 above, Defendants were employers within the definition of Title VII of the Civil Rights Act of 1964.

31.     All Plaintiff-Intervenors, with the exception of Stephanie Jackson, were seasonal agricultural workers as defined by 29 U.S.C. § 1802(10)(A) (AWPA) because they performed fieldwork of a seasonal nature for Defendants.

32.     As a matter of economic reality, Plaintiff-Intervenors were economically dependent on Defendants for their wages.

33.     For the reasons described in Paragraphs 19-27 and 31-32 above, Defendants were agricultural employers as that term is defined by 29 U.S.C. § 1802(2) (AWPA).

34.     Jerod Baker and Rodney Baker are joint employers along with J&R Baker Farms Partnership and jointly liable under the AWPA for the violations alleged here because of their operational control and their day to day supervision of Plaintiff-Intervenors.

### III.     THE H-2A PROGRAM

35.     Agricultural employers in the United States may import H-2A workers if the United States Department of Labor ("U.S. DOL") certifies that (1) there are not enough U.S. workers to perform the job and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); *Id.* § 1188(a)(1). These provisions, along with the implementing regulations, 20 C.F.R. § 655.100 *et seq.*, are commonly referred to as the "H-2A program."

36.     An employer seeking H-2A workers must file an Application for Temporary Employment Certification with the U.S. DOL's Employment and Training Administration ("ETA"). 20 C.F.R. § 655.130.

37.     Before filing with the ETA, the employer must recruit U.S. workers by submitting a job order (Form ETA-790) to the State Workforce Agency (SWA) servicing the employer's area. 20 C.F.R. § 655.121. SWAs are offices of the U.S. Employment Service. *See generally* 20 C.F.R. § 653.500.

38.     The employer's job order is circulated among nearby offices of the SWA, a process known as "intrastate clearance." *See* 20 C.F.R. § 655.121.

39.     The job order remains in circulation until the first fifty (50) percent of the work contract period elapses. During this time "the employer must provide employment to any qualified, eligible U.S. worker who applies" for the job. 20 C.F.R. § 655.135(d).

40.     The job order contains the terms to be offered to both foreign H-2A workers and U.S. workers. *See* 20 C.F.R. § 655.122(a). These terms must comply with 20 C.F.R. part 653, subpart F and 20 C.F.R. § 655.122. *Id.* § 655.121(a)(3).

41.     The job order must contain a signed statement by the employer that the terms listed therein constitute the actual terms and conditions of the employment and that all the material terms and conditions of the job have been included. 20 C.F.R. § 653.501(d)(3).

42.     While an employer may pay workers on a piece-rate basis, all workers must be paid, each pay period, an average of at least the hourly wage specified by the regulations; where a worker's piece-rate earnings would result in less than the applicable hourly wage, the employer must supplement that worker's earnings to at least the level provided by the hourly wage. 20 C.F.R. § 655.122(l)(2)(i).

43.    The employer may not give preferential treatment to the foreign H-2A workers: the job order must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 655.122(a).

44.    As part of its application for foreign workers, the employer must certify to the U.S. DOL, under penalty of perjury, that the job positions are and have been open to U.S. workers. 20 C.F.R. § 655.135(a).

## IV.    STATEMENT OF FACTS

45.    In each season relevant to this complaint, Defendants imported at least 50 foreign Hispanic workers of Mexican national origin ("Mexican workers") under the H-2A program, for planting and harvesting vegetables.

46.    In each season relevant to this complaint, Defendants submitted job orders to the Georgia Department of Labor ("GDOL") for intrastate clearance in connection with their H-2A applications.

    a.  For the Fall 2010 season, Defendants filed job order number GA7868027 requesting eighty (80) workers for the period September 10, 2010, to January 15, 2011. A copy of the Fall 2010 job order is attached as Exhibit A.

    b.  For the Spring 2011 season, Defendants filed job order number GA7923738 requesting one hundred thirty-five (135) workers for the period April 16, 2011, to July 15, 2011. A copy of the Spring 2011 job order is attached as Exhibit B.

c. For the Fall 2012 season, Defendants filed job order number GA8036058 requesting fifty-two (52) workers for the period September 1, 2012 to January 10, 2013. A copy of the Fall 2012 job order is attached as Exhibit C.

d. For the Spring 2013 season, Defendants filed job order number GA8080542 requesting one hundred (100) workers for the period April 8, 2013 to July 14, 2013. A copy of the Spring 2013 job order is attached as Exhibit D.

47. Plaintiff-Intervenors were referred to Defendants' farm by the Georgia Department of Labor ("GDOL") under the terms of the job orders submitted by Defendants.

48. The job orders offered between forty (40) and forty-five (45) hours of work per week. *See* Ex. A at 1, Item 11 (Fall 2010) (40 hours); Ex. B at 1, Item 11 (Spring 2011) (45 hours); Ex. C at 1, Item 11 (Fall 2012) (40 hours); Ex. D at 1, Item 11 (Spring 2013) (45 hours).

49. The job orders provided for a two-day training period "to demonstrate proper harvest methods and other crop specific issues." *See* Ex. A at 2, Item 15 (Fall 2010); Ex. B at 2, Item 15 (Spring 2011); Ex. C, Attachment 1 at 3, Item 15 (Fall 2012); Ex. D, Attachment 1 at 5, Item 15 (Spring 2013).

50. The job orders stated that Defendants would abide by the regulatory requirement of paying each worker at least the specified hourly rate, regardless of an individual worker's production. *See* Ex. A at 4, Item 16 (Fall 2010) ($9.11); Ex. B at 3, Item 16 (Spring 2011) ($9.11) Ex. C, Attachment 1 at 4, Item 16 (Fall 2012) ($9.39); Ex. C, Attachment 1 at 4, Item 16 (Spring 2013) ($9.78).

51.     The job orders stated that working conditions would comply with "applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other related laws." Ex. A, Attachment at 1 (Fall 2010); Ex. B, Attachment at 1 (Spring 2011); Ex. C, Attachment 1 at 2 (Fall 2012); Ex. D, Attachment 1 at 4 (Spring 2013).

52.     The Fall 2012 and Spring 2013 job orders expressly provided that Defendants would comply with the prohibition against preferential treatment of foreign workers contained in 20 C.F.R. § 655.122(a). Ex. C, Attachment 1 at 4 (Fall 2012); Ex. D, Attachment 1 at 6 (Spring 2013).

53.     The Fall 2010, Spring 2011 and Fall 2012 job orders did not specify an hourly production requirement, only the vague aspirational statement that after a two-day training period "workers are to keep up with fellow worker[s.]." Ex. A at 2, Item 15 (Fall 2010); Ex. B at 2, Item 15 (Spring 2011); Ex. C, Attachment 1 at 3 (Fall 2012).

54.     The Spring 2013 job order contained an hourly production requirement to fill seven ten-gallon buckets of cucumbers per hour. Ex. C, Attachment 1 at 5.

55.     Before they began working, Plaintiff-Intervenors were required to attend an orientation at Defendants' farm, where they watched a video and completed paperwork.

56.     Plaintiff-Intervenors were given employee handbooks at the orientation. The handbooks included copies of that season's job order and work rules.

57.     For all times relevant to this Complaint, Sheila Booth was employed by Defendants as an office manager, and conducted Plaintiff-Intervenors' hiring and orientation,

performed Plaintiff-Intervenors' pay calculations, and distributed paychecks to Plaintiff-Intervenors.

58.     In an interview conducted on October 4, 2010, Ms. Booth expressed the animus she harbors toward the American workers employed by Defendants. An excerpt of the interview transcript is attached as Exhibit E.

a.  Describing how her feelings toward American workers have changed since she began working for Defendants, Ms. Booth stated: "I was one of the main Americans that used to raise Cain about internationals comin' here and takin' Americans' jobs until I started workin' for the boys. And when I started workin' here and see why, I don't know why the boys don't go postal. I'm almost to that point." Exhibit E at 12.

b.  Describing her pronounced preference for foreign workers, Ms. Booth stated: "[i]f you could come out here and just watch, watch -- film the international workers, and you'll see how every one of them is around the tractors runnin' to the trailers to put their buckets in. And then you go out there and you see the Americans on the other side workin', they're scattered from hell to breakfast. Ain't got a clue what's goin' on…[i]t's just—it's a joke. It's just a joke. That's the only way I know to put it." Exhibit E at 10.

c.  Describing the American workers, Ms. Booth stated: "they don't care. They want a position, not a job." Exhibit E at 10.

     d.   Describing the farm's obligations under the H-2A regulations, Ms. Booth

stated: "[f]or every international worker you hire, you have to hire domestic

workers, which means is Americans. And I think we hired, like, 136 so far.

And I think every one of 'em got booted today." Exhibit E at 11.

59.      Since at least Fall 2012, Tina Lowery was employed by Defendants to assist in managing Plaintiff-Intervenors' employment at the farm.

60.      Defendants Jerod Baker and Rodney Baker personally supervised Ms. Booth and Ms. Lowery and directed their actions regarding Plaintiff-Intervenors' employment.

<u>Fall 2010</u>

61.      Plaintiff-Intervenors Maleah Caldwell, Jonathan Daniels, Fiona Dawson, Rachel Flemming, Mary Jo Fuller, Danny King, Marcus Moore, Kashonda Walker, Dana Spradley and Andrea Ware ("Fall 2010 Plaintiff-Intervenors") were qualified for and employed under the terms of the Fall 2010 job order.

62.      Fall 2010 Plaintiff-Intervenors began working on Tuesday, September 28, 2010, picking squash and zucchini.

63.      Defendants enforced a policy of segregation between the American workers and the Mexican workers in the field.

64.      Plaintiff-Intervenors Maleah Caldwell and Fiona Dawson requested to work with the Mexican workers, but were told that they were not allowed to do so.

65.      Plaintiff-Intervenor Jonathan Daniels worked with the Mexican workers one morning but was later instructed to work with the American workers.

13

66.     On Tuesday, September 28, 2010, the American workers, including Fall 2010 Plaintiff-Intervenors, were sent home at 11:00 A.M.

67.     The American workers were not provided work on Wednesday, September 29 2010.

68.     On Thursday, September 30, 2010, the American workers, including Fall 2010 Plaintiff-Intervenors, were sent home at 9:00 A.M.

69.     On both September 28 and September 30, 2010, the Mexican workers continued to work after the American workers were sent home.

70.     The American workers were not provided work on Friday, October 1, 2010.

71.     Many of the Mexican workers were provided significantly longer hours including thirty or more hours for the work week ending September 30, 2010.

72.     Fall 2010 Plaintiff-Intervenors were told to return to work on Saturday, October 2, 2010.

73.     There was no work for Plaintiff-Intervenors on Saturday, October 2, 2010.

74.     Sheila Booth told the Fall 2010 Plaintiff-Intervenors that if they did not pick nine buckets of squash within their first hour of work on Monday, October 4, 2010, they would be terminated.

75.     On Monday, October 4, 2010, after working between one and two hours, Plaintiff-Intervenors Jonathan Daniels, Mary Jo Fuller, Danny King, Marcus Moore, Kashonda Walker, Dana Spradley and Andrea Ware were terminated for having picked less than nine buckets of squash.

14

76.     Upon information and belief, no Mexican worker was subject to a productivity test on the morning of October 4, 2010, nor was any Mexican worker terminated for having picked less than nine buckets of squash on the morning of October 4, 2010.

77.     Despite not being terminated on October 4, 2010, Plaintiff-Intervenor Rachel Flemming was subsequently terminated for a failure to meet unspecified job qualifications.

78.     Upon information and belief, few if any of the Mexican workers were terminated during the Fall 2010 season.

## Spring 2011

79.     Plaintiff-Intervenor Stephanie Jackson was qualified for and employed under the terms of the Spring 2011 job order.

80.     Defendants assigned Plaintiff-Intervenor Stephanie Jackson the task of assembling boxes in the packing shed, while female Mexican workers in the shed were assigned the less difficult and more desirable task of washing vegetables.

81.     On a regular basis, Defendants sent Ms. Jackson home after one or two hours of work.

82.     On numerous days, Defendants told Ms. Jackson that there was no work for her, despite the fact that the Mexican workers were working in the shed.

83.     In the Spring of 2011 the Mexican workers had regular, full work schedule and were not repeatedly sent home for the day without receiving work.

84.     Defendants ended Ms. Jackson's employment by repeatedly sending Ms. Jackson home and then telling Ms. Jackson that they would contact her when there was available work for her.

85.     Ms. Jackson was not contacted to return to work.

86.     Before the end of the Spring 2011 season, nearly all of Defendants' American workers had been fired.

87.     Upon information and belief, few if any of Defendants' Mexican workers were terminated during the Spring 2011 season.

<u>Fall 2012</u>

88.     Plaintiff-Intervenors Ashley Banks, Quintin Daniels, Derek Davis, Willie Lee Frederick, Derrick Green, Kira Huntley, Tekoy Hutto, Domarnique Moore, Jamar Moore, and Ashley Taylor ("Fall 2012 Plaintiff-Intervenors") were qualified for and employed under the terms of the Fall 2012 job order.

89.     Defendants assigned Fall 2012 Plaintiff-Intervenors the task of picking cucumbers in the field.

90.     Upon information and belief, in Fall 2012 only Mexican workers were assigned more desirable packing shed work.

91.     Plaintiff-Intervenor Ashley Taylor asked Tina Lowery if she could work in the packing shed, but was told that she needed to stay in the field.

92.     Defendants also enforced a policy of segregation between the American workers and the Mexican workers in the field.

93.     Plaintiff-Intervenor Derek Davis worked with the Mexican workers for one day before being told that he could only work with the American workers.

94.     Defendants assigned rows to the workers through a lottery system. Mexican and American workers were assigned rows in separate parts of the field, through separate lotteries.

95.     Mexican workers were allowed to work in groups filling buckets together.

96.     American workers were not allowed to work in groups.

97.     The only training Fall 2012 Plaintiff-Intervenors received was being shown one good cucumber and one bad cucumber.

98.     September 20, 2012 was the first day of work for Plaintiff-Intervenors Ashley Banks, Willie Lee Frederick, Kira Huntley, Domarnique Moore, Jamar Moore and Ashley Taylor.

99.     On September 20, 2012, Plaintiff-Intervenor Kira Huntley became ill in the field and was instructed by her supervisor to sit on an overturned bucket.

100.     On September 20, 2012, Plaintiff-Intervenors Ashley Banks, Quintin Daniels, Willie Lee Frederick, Derrick Green, Kira Huntley, Tekoy Hutto, Domarnique Moore, Jamar Moore and Ashley Taylor were called into Defendants' office, where they were terminated as a group by Sheila Booth and another employee of Defendants. They were told that they were being terminated for not working hard enough and for work rule violations such as smoking and sitting on buckets.

101.     The work rules provided to Plaintiffs and attached to the Fall 2012 job order did not prohibit smoking. *See* Ex. C, Attachment 2.

102.     Upon information and belief, few if any of Defendants' Mexican workers were terminated for not working hard enough or for violating work rules during the Fall 2012 season.

103.     On or about September 21, 2012, Plaintiff-Intervenor Derek Davis was terminated for not keeping up with the Mexican workers.

104.     Upon information and belief, few if any of Defendants' Mexican workers were similarly terminated.

105.     When Fall 2012 Plaintiff-Intervenors were working in the field, Defendants did not provide sufficient quantities of cool drinkable water and allowed hours to elapse before refilling the available drinking water containers.

106.     When Fall 2012 Plaintiff-Intervenors were working in the field, Defendants did not provide sufficient cups for all workers to drink from the water coolers with individual cups.

107.     Fall 2012 Plaintiff-Intervenors were not compensated for the time they spent at Defendants' mandatory orientation.

<u>Spring 2013</u>

108.     Plaintiff-Intervenors Jonathan Daniels, Monica Edwards, Nakia McCray, Charles Moore, Joseph Phillips and Tomika Roberts ("Spring 2013 Plaintiff-Intervenors") were qualified for and employed under the terms of the Spring 2013 job order.

109.     Plaintiff-Intervenors Monica Edwards and Tomika Roberts began their work in the packing shed.

110.     On or about May 9, 2013, Defendants replaced all of the American packing shed workers with Mexican workers and re-assigned the American workers less desirable fieldwork.

111.     Plaintiff-Intervenor Monica Edwards was re-assigned staking work in the field.

112.     Plaintiff-Intervenors Jonathan Daniels, Nakia McCray, Charles Moore and Joseph Phillips began their work in the field.

113.     On or about May 17, 2013, two American workers were involved in an altercation.  As a result of that altercation, all of the American fieldworkers were taken to the office, where Tina Lowery instructed them to sign written warnings stating that if they were called back to the office again they would be fired.

114.     Throughout their time working in the field, the 2013 American workers, including Spring 2013 Plaintiff-Intervenors, were regularly sent home while the Mexican workers continued to work.

115.     During the Spring 2013 season, Tina Lowery told the American workers that the production requirement was either fifteen (15) or twenty-two (22) buckets per hour.

116.     During the Spring 2013 season, one of the individual Baker Defendants told Plaintiff-Intervenor Charles Moore that the production requirement was twenty-two (22) buckets.

117.     On May 30, 2013, all of the American workers were called into the office, where a posting listed workers who were not meeting the hourly production requirement.

118.     The American workers were told that if they did not increase their production they would be fired.

119.     Later on May 30, 2013, approximately five American workers, including Plaintiff-Intervenors Monica Edwards and Charles Moore, were called back into the office. They

were told by Tina Lowery and another employee of Defendants that they were being fired for not working hard enough.

120.　　Plaintiff-Intervenor Charles Moore and another American worker asked Defendants' employee to call their supervisor in the field, which he did. After the call, the two of them were allowed to continue working.

121.　　On or about June 3, 2013, Tina Lowery terminated Plaintiff-Intervenors Jonathan Daniels, Charles Moore and Nakia McCray, along with approximately ten (10) American workers, for not making production.

122.　　Upon information and belief, no Mexican worker was terminated in the Spring 2013 season for not making a set amount of piece rate production per hour.


## COUNT I

### PATTERN OR PRACTICE OF DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN AND/OR RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

123.　　Plaintiff-Intervenors incorporate each of the allegations contained in Paragraphs 1 through 122 above by reference.

124.　　Plaintiff-Intervenors, members of a protected class, assert this claim in intervention against all Defendants for discrimination on the basis of national origin and/or race in violation of Title VII of the Civil Rights Act, as amended.

125.　　Defendants engaged in pattern or practice of unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by intentionally and unlawfully subjecting Plaintiff-

Intervenors to disparate terms and conditions of employment based on their national origin and/or race, and by terminating Plaintiff-Intervenors based on their national origin and/or race as set forth below.

<u>Disparate Terms and Conditions</u>

126.     Defendants segregated their black American workers and their Mexican workers, as set forth in Paragraphs 63-65 and 92-94 above.

127.     Defendants disciplined their black American workers as a group for the misconduct of individual workers, as set forth in Paragraph 113 above.

128.     Defendants assigned work in a discriminatory fashion, assigning their black American workers less desirable work than their Mexican workers, as set forth in Paragraphs 80, 89-91 and 110-112 above.

129.     Defendants provided their black American workers with little or no training, as set forth in Paragraphs 49 and 97 above.

130.     Defendants provided their black American workers with far fewer hours of work than their Mexican workers; black American workers were regularly sent home or told there was no work while Mexican workers were given work, as set forth in Paragraphs 49, 66-71, 81-83 and 114 above.

131.     Defendants purposely frustrated their black American workers' productivity by imposing restrictions on their work which were not imposed on the Mexican workers, as set forth in Paragraphs 95 and 96 above.

132.     Defendants threatened their black American workers with termination by fabricating productivity requirements which were neither disclosed in the relevant job order nor applied to their Mexican workers, as set forth in Paragraphs 53, 74-76 and 115-120 above.

133.     Defendants subjected their black American workers to disparate terms and conditions such as those complained of in Paragraphs 126 through 132 above because of their national origin and/or race.

<u>Termination</u>

134.     Defendants terminated their black American workers based on unlawful production requirements which were neither disclosed in the relevant job order nor applied to Defendants' Mexican workers, as set forth in Paragraphs 53, 74-78 and 115-122 above.

135.     Defendants terminated their black American workers based on unlawful production requirements which were not applied to Defendant's Mexican workers, as set forth in Paragraphs 53, 103 and 104 above.

136.     Defendants terminated their black American workers based on work rules which were neither disclosed nor applied to Defendant's Mexican workers, as set forth in Paragraphs 99 through 102 above.

137.     Defendants terminated their black American workers for unlawful reasons, as set forth in Paragraphs 77 and 84 above.

138.     Defendants unlawfully and disproportionately terminated their black American workers, as complained of in Paragraphs 134 through 137 above, because of their national origin and/or race.

139.     The effect of the conduct complained of in Paragraphs 125 through 138 above has been to deprive Plaintiff-Intervenors of equal employment opportunities and otherwise adversely affect their status as employees.  This unlawful conduct resulted in economic detriment to Plaintiff-Intervenors.

140.     The unlawful employment practices complained of in Paragraphs 125 through 138 above were done with malice or with reckless indifference to the federally protected rights of Plaintiff-Intervenors.

## ALTERNATIVE COUNT I

## DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN AND/OR RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

141.     Plaintiff-Intervenors incorporate each of the allegations contained in Paragraphs 1 through 122 above by reference.

142.     Plaintiff-Intervenors assert this alternative Count for individual discrimination should the Court not find a pattern or practice of discrimination as pled in Count I.

### Fall 2010 Plaintiff-Intervenors

143.     Fall 2010 Plaintiff-Intervenors, members of a protected class, assert the claim contained in paragraph 144 below.

144.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by subjecting Fall 2010 Plaintiff-Intervenors to disparate terms and conditions of

employment based on their national origin and/or race, as set forth in Paragraphs 53 and 63-76 above.

145.     Plaintiff-Intervenors Jonathan Daniels, Rachel Flemming, Mary Jo Fuller, Danny King, Marcus Moore, Kashonda Walker, Dana Spradley and Andrea Ware, members of a protected class, assert the claim contained in Paragraph 1 below.

146.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by terminating the Plaintiff-Intervenors identified in Paragraph 145 above based on their national origin and/or race, as set forth in Paragraphs 53, 61 and 74-78 above.

Spring 2011 Plaintiff-Intervenors

147.     Stephanie Jackson, a member of a protected class, asserts the claims contained in Paragraphs 148 and 149 below.

148.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by subjecting Stephanie Jackson to disparate terms and conditions of employment based on her national origin and/or race, as set forth in Paragraphs 79 through 83 above.

149.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by terminating Stephanie Jackson based on her national origin and/or race, as set forth in Paragraphs 84, 85 and 87 above.

Fall 2012 Plaintiff-Intervenors

150.     Fall 2012 Plaintiff-Intervenors, members of a protected class, assert the claim contained in Paragraph 151 below.

151.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by subjecting Fall 2012 Plaintiff-Intervenors to disparate terms and conditions of employment based on their national origin and/or race, as set forth in Paragraphs 53 and 88-104 above.

152.     Plaintiff-Intervenors Ashley Banks, Quintin Daniels, Derek Davis, Willie Lee Frederick, Derrick Green, Kira Huntley, Tekoy Hutto, Domarnique Moore, Jamar Moore and Ashley Taylor, members of a protected class, assert the claim contained in Paragraph 153 below.

153.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by terminating the Plaintiff-Intervenors identified in Paragraph 152 above based on their national origin and/or race, as set forth in Paragraphs 53, 88 and 98-104 above.

<u>Spring 2013 Plaintiff-Intervenors</u>

154.     Spring 2013 Plaintiff-Intervenors, members of a protected class, assert the claim contained in Paragraph 155 below.

155.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by subjecting Spring 2013 Plaintiff-Intervenors to disparate terms and conditions of employment based on their national origin and/or race, as set forth in Paragraphs 54 and 108-122 above.

156.     Plaintiff-Intervenors Jonathan Daniels, Monica Edwards, Charles Moore and Nakia McCray, members of a protected class, assert the claim contained in Paragraph 157 below.

157.     Defendants engaged in unlawful employment practices in violation of 42 U.S.C. § 2000e-2(a) by terminating the Plaintiff-Intervenors identified in Paragraph 156 above based on their national origin and/or race, as set forth in Paragraphs 54, 108 and 115-122 above.

158.     The effect of the conduct complained of in Paragraphs 141 through 157 above has been to deprive Plaintiff-Intervenors of equal employment opportunities and otherwise adversely affect their status as employees. This unlawful conduct resulted in economic detriment to Plaintiff-Intervenors.

159.     The unlawful employment practices complained of in Paragraphs 141 through 157 above were intentional.

160.     The unlawful employment practices complained of in Paragraphs 141 through 157 above were done with malice or with reckless indifference to the federally protected rights of Plaintiff-Intervenors.

<u>**COUNT II**</u>

**DISCRIMINATION IN CONTRACT**

161.     Plaintiff-Intervenors incorporate each of the allegations contained in Paragraphs 1 through 122 above by reference.

162.     Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors, members of a protected class, assert the claim contained in Paragraph 163 below pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, against all Defendants.

163.	Defendants intentionally discriminated against Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors in their employment contracts because of their race and/or lack of alienage, by imposing discriminatory working conditions and denying them the benefits, privileges, terms and conditions of the contractual relationship and by seeking to enforce employment standards against these Plaintiff-Intervenors which were not enforced against Defendants' foreign Mexican workers, as set forth in Paragraphs 53, 54, 88-104 and 108-122 above.

164.	Plaintiff-Intervenors Ashley Banks, Jonathan Daniels, Quintin Daniels, Derek Davis, Monica Edwards, Willie Lee Frederick, Kira Huntley, Tekoy Hutto, Derrick Green, Charles Moore, Domarnique Moore, Jamar Moore, Nakia McCray and Ashley Taylor assert the claim contained in Paragraph 165 below pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, against all Defendants.

165.	Defendants intentionally discriminated against the Plaintiff-Intervenors identified in Paragraph 164 above by terminating them because of their race and/or lack of alienage in favor of Defendants' foreign Mexican workers, as set forth in Paragraphs 53, 54, 88, 98-104, 108 and 115-122 above.

166.	Defendants' actions as complained of in Paragraphs 161 through 165 above violated Fall 2012 Plaintiff-Intervenors' and Spring 2013 Plaintiff-Intervenors' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

167.     Fall 2012 Plaintiff-Intervenors' and Spring 2013 Plaintiff-Intervenors' rights under 42 U.S.C. § 1981 to make and enforce contracts were clearly established at the time Defendants discriminated against Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors.

168.     Defendants' actions as complained of in Paragraphs 161 through 165 above intentionally and impermissiblyfavored Mexican workers over Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors in the making and enforcement of employment contracts in violation of 42 U.S.C. § 1981.

169.     As a direct result of Defendants' actions as complained of in Paragraphs 161 through 165 above, Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors have been subjected to discriminatory terms and conditions of employment and have suffered substantial damages.

170.     As a direct result of Defendants' actions as complained of in Paragraph 165 above, the Plaintiff-Intervenors identified in Paragraph 164 above have been terminated and have suffered substantial additional damages.

171.     Defendants have exhibited oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for Fall 2012 Plaintiff-Intervenors' and Spring 2013 Plaintiff-Intervenors' civil rights so as to entitle Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors to an award of punitive damages to punish Defendants for their conduct and to deter Defendants and others like them from such conduct in the future.

172.     Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors seek all appropriate relief, including back pay, declaratory and injunctive relief, attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

**COUNT III**

**VIOLATIONS OF THE AGRICULTRAL WORKER PROTECTION ACT**

173.     Plaintiff-Intervenors incorporate each of the allegations contained in Paragraphs 1 through 122 above by reference.

174.     This Count sets forth claims for money damages, declaratory relief, and injunctive relief by Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors, as identified below, against all Defendants for their violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.*

Fall 2012

175.     The Fall 2012 job order as described in Paragraphs 46-53 and 101 above constituted the working arrangement between Fall 2012 Plaintiff-Intervenors and Defendants.

176.     Fall 2012 Plaintiff-Intervenors assert the claims contained in Paragraphs 177 and 178 below.

177.     As set forth in Paragraphs 88 through 107 above, Defendants violated the AWPA working arrangement, 29 U.S.C. § 1832(c), by:

a. giving preferential treatment to Defendants' foreign workers, in violation of 20 C.F.R. § 655.122(a);

b. failing to provide training to Fall 2012 Plaintiff-Intervenors; and

c. failing to provide Fall 2012 Plaintiff-Intervenors with adequate drinking water and cups, in violation of 29 C.F.R. § 1928.110.

178. As set forth in Paragraphs 55 and 107 above, Defendants failed to pay wages owed when due, in violation of 29 U.S.C. § 1832(a).

179. Plaintiff-Intervenors Ashley Banks, Quintin Daniels, Willie Lee Frederick, Derrick Green, Kira Huntley, Tekoy Hutto, Domarnique Moore, Jamar Moore and Ashley Taylor assert the claim contained in Paragraph 180 below.

180. As set forth in Paragraphs 100 and 101 above, Defendants violated the AWPA working arrangement, 29 U.S.C. § 1832(c), by terminating the Plaintiff-Intervenors identified in Paragraph 179 above based on work rules which were not part of the working arrangement.

181. Plaintiff-Intervenor Derek Davis asserts the claims contained in Paragraph 182 below.

182. As set forth in Paragraphs 53 and 103 above, Defendants violated AWPA by:

a. providing false and misleading information regarding production requirements, in violation of 29 U.S.C. § 1831(e); and

b. violating the AWPA working arrangement, 29 U.S.C. § 1832(c), by terminating Plaintiff-Intervenor Derek Davis based on an unenforceable production requirement.

183.     The Spring 2013 job order as described in Paragraphs 46, 52 and 54 above constituted the working arrangement between Spring 2013 Plaintiff-Intervenors and Defendants.

184.     Spring 2013 Plaintiff-Intervenors assert the claims contained in Paragraph 185 below.

185.     As set forth in Paragraphs 108 through 122 above, the Defendants violated the AWPA working arrangement, 29 U.S.C. § 1832(c), by:

      a.   giving preferential treatment to Defendant's foreign workers, in violation of 20 C.F.R. § 655.122(a); and

      b.   failing to provide training to Spring 2013 Plaintiff-Intervenors.

186.     Plaintiff-Intervenors Jonathan Daniels, Monica Edwards, Charles Moore and Nakia McCray assert the claims contained in Paragraph 187 below.

187.     As set forth in Paragraphs 54 and 116-122 above, Defendant violated AWPA by:

      a.   providing false and misleading information concerning production requirements, in violation of 29 U.S.C. § 1831(e); and

      b.   violating the AWPA working arrangement, 29 U.S.C. § 1832(c), by terminating the Plaintiff-Intervenors identified in Paragraph 186 based on an undisclosed production requirement.

188.     Defendants' violations of the AWPA working arrangement as set forth in this Count were without justification.

189.     The violations of the AWPA and its attendant regulations set forth in this Count were the natural consequences of the conscious and deliberate actions of the Defendants and were intentional within the meaning of the AWPA.

190.     As a result of Defendants' violations of the AWPA and its attendant regulations as set forth in this Count, Fall 2012 Plaintiff-Intervenors and Spring 2013 Plaintiff-Intervenors have suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Intervenors respectfully request that this Court grant them the following relief:

(a)     Under Count I (or Alternative Count I):

1.     Judgment against all Defendants and in favor of each Plaintiff-Intervenor in the amount of his or her respective back wages as proved at trial, plus prejudgment interest;

2.     Appropriate injunctive and declaratory relief, including a permanent injunction enjoining all Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in national origin discrimination or race discrimination and any other employment practice which discriminates on the basis of national origin or race;

3.     Punitive damages in an amount to be determined at trial;

4.     Court costs, including discretionary costs;

5.     An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988;

(b)    Under Count II

    1.    Judgment against all Defendants and in favor of each Plaintiff-Intervenor in the amount of his or her respective back wages as proved at trial, plus prejudgment interest;

    2.    Appropriate injunctive and declaratory relief, including a permanent injunction enjoining all Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in alienage discrimination or race discrimination and any other employment practice which discriminates on the basis of alienage or race;

    3.    Punitive damages in an amount to be determined at trial;

    4.    Court costs, including discretionary costs;

    5.    An award of reasonable attorneys' fees;

(c)    Under Count III:

    1.    Declare that all Defendants have willfully violated the AWPA as specified above;

    2.    Award each Plaintiff-Intervenor the greater of his or her actual damages or statutory damages of $500 per violation for each violation of the AWPA;

    3.    Enjoin all Defendants from further violations of the AWPA;

(d)    Award Plaintiffs pre- and post-judgment interest as allowed by law;

(e)    Cast all costs upon Defendants; and

(f)    Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this 25th day of November, 2014,

/s/ Dawson Morton
Dawson Morton
Georgia Bar No. 525985
Lisa J. Krisher
Georgia Bar No. 429762
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623

*Attorneys for Plaintiffs*